UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Criminal Action No. 12-cr-00106-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    **KIZZY KALU** and
2.    PHILIP LANGERMAN,

    Defendants.

_____

**OPINION AND ORDER CLARIFYING EVIDENTIARY RULINGS**
_____

    **THIS MATTER** comes before the Court *sua sponte*. At the conclusion of the trial proceedings on June 13, 2013 (and on some earlier occasions), the Court heard a series of evidentiary objections and ruled on the admissibility of certain exhibits proffered by the Government. With the luxury of additional time for reflection, it occurs to the Court that, given the lateness of the hour and the need to move on to other scheduled proceedings, the Court's stated justifications for its rulings may have been incomplete or unclear. This Opinion and Order supplements and clarifies the basis for the Court's prior rulings.

    The proffered exhibits are certain documents seized from Mr. Kalu's home pursuant to a validly-obtained and executed search warrant. The parties have stipulated to the admission of some of the seized documents, but Mr. Kalu has objected to the admission of others. In general, Mr. Kalu's objections sound in relevance under Fed. R. Evid. 401 and 403, and challenges to the foundational showings made by the Government

1

for admission, primarily under Fed. R. Evid. 901.  The Government's primary response to the relevance objections, and essentially its exclusive response to the foundational objections, is that the documents were taken from the Mr. Kalu's home.  The Government seeks to lay the foundation and introduce the documents through testimony of the government agent who supervised the execution of the warrant and reviewed the documents that were seized.

Upon further consideration of the issues and arguments presented, it appears to the Court that there are three primary categories of documents at issue thus far, and each category offers different foundational and relevance issues.

**Category 1** consists of documents whose significance to the matters in dispute derives from their mere existence.  Much like physical evidence seized from a defendant's home in a case involving drugs or weapons, the documents in Category 1 have a tangible character about them that, the Government contends, incriminates Mr. Kalu by virtue of his mere possession of them.  Two of the documents proffered by the Government to date fall within this category: (i) Exhibit 2991, which is a printed job description form for the position of Charge Nurse, and is (the Government contends) significant due to the fact that the "name," "date of hire," and "supervisor" fields have been filled in with handwriting, and have subsequently been covered over with correction tape; and (ii) Exhibit 3107, a single-page document bearing the letterhead of the Philippine Overseas Employment Administration, and bearing the purported signature of Karthy Miller (a person whose very existence is disputed) in the form of a printed piece of paper taped to the face of the document.

As noted above, these documents' significance is not necessarily in their textual contents, but rather, because they possess a physical characteristic that arguably has a relevance to the charges at issue. Because, arguably, Mr. Kalu's mere possession of these documents is allegedly probative, they can be treated like any other physical item for foundational purposes. As with any physical item, like drugs or weapons, the only foundation that need be laid for authentication of these documents is that: (i) they were found in Mr. Kalu's home during the execution of the warrant; and (ii) they are in the same physical condition they were in when they were found (*i.e.* that the ink signature on Exhibit 3117 was there when the document was seized, and not added later). Fed. R. Evid. 901(a), (b)(1), (b)(4). The Court finds that the Government has adequately established the former through the testimony of its witness, and to the extent that the witness' testimony has not explicitly stated the latter (although she has implied it), the Court finds that Mr. Kalu has not objected to the documents' admission on this ground. Accordingly, the Court finds that the Government has laid an adequate foundation for the admission of the Category 1 documents.

The Court further finds that these documents are relevant. As to Exhibit 2991, the Court understands the testimony thus far to state that job descriptions of this type are to be completed on an individual-by-individual basis by the nursing facility where the employee will be working, not by Mr. Kalu. Thus, the fact that Mr. Kalu is in possession of a document in which the individual's identifying information was blanked out permits an inference that Mr. Kalu was using it as a form that he would complete himself for other nurses, rather than properly having the nursing facilities complete it. This, in turn, permits the further inference that Mr. Kalu was making misrepresentations to others (*e.g.*

immigration authorities) about whether the form had been completed by the correct person or entity.[1] As to Exhibit 3107, the document is relevant because of the taped copy of what purports to be Ms. Miller's signature. In this sense, the taped piece of paper is akin to a physical stamp of "Ms. Miller's" signature, permitting an inference that Mr. Kalu was "signing" documents on behalf of (the potentially fictitious) Ms. Miller using the taped piece of paper.[2] Thus, the jury could infer from Mr. Kalu's possession of this document that he was concealing his identity behind the alias of "Karthy Miller" for deceptive purposes.

Accordingly, the Court finds that the two specifically-identified documents in Category 1 are admissible.

**Category 2** consists of documents whose <u>contents</u>, not simply their physical existence, renders them relevant. In other words, these documents are rendered relevant by virtue their contents (as well as the fact that they were found in Mr. Kalu's home). For example, Exhibit 3209 is entitled "Promissory Note" and appears to embody the terms of an agreement between Mr. Kalu and Mr. Langerman. The document does not bear any physical characteristics that render it significant; rather, its significance, if any, is derived from an examination and consideration of its actual contents. Documents in

---

[1]   Admittedly, this is not the only inference that can be drawn from Mr. Kalu's possession of the document, and Mr. Kalu is free to put on evidence or make argument proposing an innocuous alternative explanation for his possession of the document in this particular form.

[2]   This inference is bolstered by documents such as Exhibit 3109, a photocopy of a document similar to Exhibit 3107, which quite clearly shows that the same piece of tape had been used to affix Ms. Miller's "signature" on the document. Similarly, although there are fewer physical indicia of the use of the piece of tape to affix a "signature" to Exhibit 3111, under Fed. R. Evid. 901(b)(3), the jury might be permitted to make a lay comparison of the attributes of that document and Exhibits 3107 and 3019 to reach a conclusion as to whether the same piece of tape was used there as well.

this category present three separate evidentiary issues: authentication, hearsay, and relevance.

Turning first to the question of authentication, Fed. R. Evid. 901(a) requires that the proponent of an exhibit demonstrate "that the item is what the proponent claims it is." Except for those documents that fall within Fed. R. Evid. 902's exceptions for "self-authenticating" documents (few, if any of which, apply here), some "extrinsic evidence of authenticity" is required. For most of the documents seized in the execution of the warrant, the testimony of the Government's agent to that fact is not sufficient to provide such extrinsic evidence. She is not, for example, a person "with knowledge . . . that [the] item is what it is claimed to be," Fed. R. Evid. 901(b)(1); a person who can opine as to the authenticity of handwriting found on the document, having obtained a familiarity with that handwriting outside the litigation, Fed. R. Evid. 901(b)(2); etc. The mere fact that a document such as Exhibit 3209 was in Mr. Kalu's possession does not suffice to demonstrate that the document is what it purports to be.[3] Without a sufficient, particularized showing of authenticity as to each of these documents, the Court will exclude them on foundation grounds under Rule 901.

---

[3] Admittedly, Fed. R. Evid. 901(b)(4) permits some documents to be authenticated based on 'the appearance, contents, substance, internal patterns, or other distinctive characteristics" of the document "taken together with all of the circumstances." The Government might reasonably argue that the particular characteristics of a document like Exhibit 3209 permit a finding that it is what it purports to be – a promissory note – by virtue of its contents and its layout (which is consistent with a formal legal agreement), a showing (either lay or expert under Rule 901(b)(2) or (3)) that Mr. Kalu's purported signature on it is his and not a forgery, all coupled with circumstances like it being found in the possession of one of the parties to the purported agreement. *See e.g. U.S. v. Miller*, 985 F.Supp. 1284, 1286 (D. Kan. 1997). However, the Court does not suggest that all of the various other documents falling into Category 2 might be authenticated under Rule 901(b)(4), simply because they were found in Mr. Kalu's possession.

The Court further understands the Government to contend that many of the documents in Category 2 are relevant because the facts demonstrated by their contents – in other words, that the relevance of the documents stems from the truthfulness of their contents. For example, Exhibits 3087-3102 are documents appearing to be invoices, sent by the Fragomen law firm to Mr. Kalu, reflecting charges for legal services that Fragomen provided to Mr. Kalu. The Court understands that the Government is offering these documents for the truth of their contents – *e.g.* that Mr. Kalu was indeed billed $1,296 by Fragomen for services relating to Marienne Lou Claridad. Besides the authentication problems discussed above, documents that the Government seeks to admit for the truth of their contents raise hearsay issues. To the extent such documents are proffered for admission, and a hearsay objection is raised, the Government must be prepared to demonstrate either that the document is not being offered for its truth, or that one of the exceptions to the hearsay rule applies.

Finally, there is the question of relevance. Although relevance in the broadest sense inquires as to whether the exhibit is probative of one of the factual issues in dispute, the relevance question is, in a narrower sense, somewhat informed by (and itself somewhat informs) the preceding inquiries: the strength of the evidence supporting authentication and the degree to which the use being made of it comports with the hearsay rule. For example, if the relevance of Exhibit 3209 is to prove the truth of the matters contained in that exhibit (*i.e.* that Mr. Kalu and Mr. Langerman had an agreement containing certain terms, or that their agreement was reached on a certain date), it would be appropriate to require that the Government's showing of authenticity include some verification of Mr. Kalu's signature on it; one can hardly ascribe relevance to a document

purporting to be an agreement without proof that one of the parties to it indeed agreed. If, on the other hand, the Government's purpose of offering the exhibit is limited to establishing that Mr. Kalu was aware of Mr. Langerman's connection with Adam University (a fact mentioned in the Promissory Note), the rigorousness of the showing of authenticity might be satisfied by merely showing Mr. Kalu's possession of a document that recites such fact. If the Government's purpose in offering the Fragomen exhibits is to show actual amounts billed to Mr. Kalu, a sufficient showing of authenticity and the applicability of a hearsay exception might require the testimony of a person familiar with Fragomen's recordkeeping. If, on the other hand, the Government's purpose is merely to show that Mr. Kalu merely had some communications with Fragomen, without the contents of those communications being particularly important, testimony establishing only that a Fragomen invoice was found in the search of his home might be sufficient foundation to admit the document.

The Court will not, through this order, purport to admit or exclude any document falling within Category 2 that has not already been addressed during trial, or to modify any rulings it has previously made involving such documents. To the extent that this clarification of the Court's analysis is helpful to the parties, and the Government believes that it can make a sufficient showing for admission of a document that has previously been refused by the Court, the Government may move (individually for each document) at the appropriate time for reconsideration of such ruling, accompanied by an appropriate showing of foundation, relevance, and other applicable legal requirements.

Finally, **Category 3** are documents that the Government offers under new exhibit numbers, even though those copies of those documents have already been admitted under

other exhibit numbers via the testimony of other witnesses. It is somewhat unclear to the Court what documents fall in this category: the Government's arguments in support of admission of certain exhibits (*e.g.* Exhibit 2991) sometimes included representations that, for example, "a document just like this has been already admitted, at least once, and I believe also with Ms. Claridad, she had a similar document." It may be that the Government's words were ill-chosen: the Court's review of the exhibits admitted during the testimony of previous witnesses does not disclose any exhibits <u>identical</u> to ("just like") Exhibit 2991, including its pertinent physical characteristic of being whited out. But out of an abundance of caution, the Court advises the parties that it will not generally admit multiple copies of the same exhibit under different exhibit numbers. If either party seeks to have a witness identify and testify about a particular document, and a fully identical version of that document has already been admitted as an exhibit previously, the parties shall direct the witness to the exhibit number of the already-admitted exhibit, not proffer a new exhibit.

Dated this 14th day of June, 2013.

**BY THE COURT:**

*Marcia A. Krieger*
_____

Marcia S. Krieger
Chief United States District Judge