IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 12-cr-00106-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **KIZZY KALU**,

    Defendant.

___

**GOVERNMENT'S OPPOSITION TO INTENDED SENTENCE**
___

The United States, through its representatives, John F. Walsh, United States Attorney for the District of Colorado, by Beth Gibson, Special Assistant United States Attorney, and Robert Brown, Assistant United States Attorney, hereby submits the following Opposition to Intended Sentence.

On December 10, 2013, the Court announced its intent to impose a sentence of 130 months and invited the parties to state any objections to that sentence. The United States objects to a sentence of only 130 months. A sentence of 130 months ignores the jury's finding that the defendant committed forced labor by threatening his victims, is too extreme a variance from the advisory sentencing range, and fails to serve the sentencing factors in 18 U.S.C. § 3553. Of most concern is the Court's plan to treat the crime as merely a fraud and to apply the fraud guideline without respect to the higher guideline applicable to the forced labor convictions.

The Court determined that the offense level under the advisory sentencing guidelines was level 40 and the defendant's criminal history category was I. Therefore, the guidelines advise a sentence in the range of 292-365 months. A sentence of 130 months constitutes a variance of 162 months from the bottom of the advisory sentencing guideline. The Court announced the intent to impose a sentence well under half of what the guidelines advise. To warrant such an extreme difference, one would surmise the Court found something extraordinary about the defendant as a person or perhaps a minor, technical violation of a criminal statue. The Court's expressed reasoning had nothing to do with the defendant's background. Indeed, the Court's astute assessment of the defendant, particularly his lack of remorse and egocentric personality, militated in favor of a high sentence. The Court expressed a very narrow reasoning for such an unprecedented variance. The Court viewed the defendant's crimes as simply fraud offenses warranting only a fraud guideline.

*The Forced Labor Guidelines Appropriately Apply*

The Court explained it regarded the forced labor guidelines as too severe for the defendant's conduct. The Court explained that, because the defendant used economic coercion to obtain the labor of the nurses, the defendant's crime was truly a fraud offense. This effectively nullifies the jury's verdict regarding the forced labor. The jury heard about the defendant's threats and coercion and concluded that the defendant engaged in forced labor. The Court should not set aside the jury's finding by characterizing the defendant's actions as mere fraud. The jury attentively heard the evidence and found that the defendant engaged in both fraud and forced labor. The sentence should capture both crimes.

If the Court applies only the fraud guideline, the Court will fail to properly consider the defendant's actions *after* the victims arrived in the United States. The defendant brought them

through fraud but his threats kept them laboring for his benefit. Although the defendant did engage in substantial fraud and economic coercion, that was not the full extent of his conduct. The sentence must acknowledge that, after their arrival in the United States, the defendant threatened his victims repeatedly and routinely in person, by phone, and by email. The fraud guidelines do not account for such conduct. The defendant could have engaged in fraud to secure their initial payments and to secure their entry without then also threatening them with deportation, keeping them in debt, and puffing about his power and connections.

Even if the Court regards the forced labor guideline as too high, the defendant should face a sentence more significant than he would face had he only engaged in the fraud offense. Otherwise, the sentence does not reflect that the defendant exploited vulnerable victims and preyed on their status as foreign nationals subject to deportation. Having himself faced deportation from the United States, the defendant knew how to most effectively exploit his victims. As previously emphasized, the defendant did not talk simply in terms of cancelling visas. He told the victims he would track them down and report them to multiple government agencies.

The Court stated that this case is not a typical forced labor case. Although the government acknowledges that many forced labor cases involve a level of physical abuse not present in this case, the government contends that the defendant's conduct is precisely what Congress intended to address. Congress specifically crafted the law to include cases like this one. *See* H.R. Conf. Rep. No. 106-939 at *101 (2000), 2000 WL 1479163 (Oct. 5, 2000) ("[s]ection 1589 is intended to address the increasingly subtle methods of traffickers who place their victims in modern-day slavery, such as where traffickers threaten to harm third person, restrain their victims without physical violence or injury, or threaten dire consequences by means

other than overt violence. . . . [F]ederal prosecutors will not have to demonstrate physical harm or threats of force against victims").

In addition, Courts now accept that forced labor encompasses behavior far beyond that the Court may perceive as a "typical" forced labor case. *See United States v. Dann*, 652 F.3d 1160, 1169-70 (9th Cir. 2011) (affirming conviction involving non-physical harms, including financial, reputational, and deportation to Peru); *United States v. Nnaji*, 447 Fed. Appx. 558, 559 (5th Cir. 2011) (stating that "[s]erious harm can include psychological coercion"); *United States v. Paulin*, 329 Fed. Appx. 232, 234 (11th Cir. 2009) (noting that "a conviction for violating § 1589(a) may be premised on psychological coercion"); *United States v. Calimlim*, 538 F.3d 706, 711-13 (7th Cir. 2008) (stating that the defendants knew that, for the victim, not being able to send money back home was a serious harm; noting that the defendants "warned [the victim] about her precarious position under the immigration laws;" and observing that "the statute "[t]he language of § 1589 covers nonviolent coercion").

*The factors in 18 USC 3553 Call for a Sentence of More than 130 Months*

A sentence of 130 months is not sufficient to serve the factors in 18 U.S.C. § 3553. Such sentence would not reflect the seriousness of forced labor, promote a respect for the law, or afford adequate deterrence. If treated as a fraud offense, there is no recognition of the severity of forced labor and the nature of exploitation and harm to the victims. It would be wrong to minimize, or ignore, that aspect of the case simply because the victims were able to live in the United States. It is egregious to suggest that the victims got what they wanted. They came on false promises and were fed a steady diet of threats, knowing that leaving the defendant could mean economic ruin for them and their families. The Court limited the testimony at trial about life in the Philippines yet enough came in to show the jury the position of the victims. The

sentence should reflect the seriousness of forced labor and send a message that the defendant's exploitation was wholly unacceptable no matter the country where it occurred.

A sentence of 130 months also fails to capture the aggravating nature and circumstances of the offense and the history and characteristics of the defendant. The defendant's history explains he knew where to strike to evoke fear in his victim. He targeted their fear of deportation. He also boasted about his power, was known to yell, and was regarded as a bully. His emails and text messages reflect those traits, along with the testimony of victims. The defendant acknowledged on cross examination that, as a result of an altercation with a student, TLHU severed their relationship with him. He initially lied about the reason for the severance. The student had refused to go to work at a nursing home. She claimed the defendant head-butted her. The police had to respond to the campus as a result of the altercation. The defendant was kicked off campus and was not permitted to be alone with students. That altercation and news of it confirmed in the minds of the nurses that they should be fearful of the defendant and comply with his directives that they labor for his financial benefit.

The testimony also shows that the defendant was a yeller. Evelyn Hu and others testified that the defendant was a yeller. His emails, which were admitted into evidence and considered by the jury, show his tone and tend to reveal he was a bully. The defendant threatened people. The impact of those threats was clearly visible in the broken presence of Evelyn Hu. She paid more than $8,000 to the defendant even after federal agents assured her she need not pay. She was scared he would hit her, scared he would report her as he had reported the four who escaped, scared of the hopeless debt he imposed. Emily Marcelo testified that in addition to making him pay her, the defendant would exert additional intimidation by coming to her house at night to

collect checks or cash. Victims described that he kept keys to their apartments and came as he pleased.

The defendant's statements at sentencing are quite telling. He acknowledged nothing about the plight of his victims. He has an opportunity to "check that box" now but doing so would be hollow. The defendant also emphasized how important volunteering was to him and his family. He failed to note that he was so able to volunteer because others worked and were forced to give him almost half their earnings. He supported himself on the backs of others. Froila Reyes worked well over 40 hours a week. The defendant called it volunteering and pocketed the earnings – passing her meager stipends. He made $32 for her first 40 hours and more than $50 for each of her overtime hours. Emily Marcelo worked double shifts—16 hours per day—almost her entire time under Kalu's sphere. He was thus raking in their earnings while he did no real work and was free to make himself feel good volunteering. That he cites his volunteerism as a favorable factor at sentencing signals that he still fails to see that he was able to do so because of his systematic exploitation of others. His systematic exploitation of others explains how the defendant and his family could thrive in Highlands Ranch in the absence of any significant employment history.

The Court may properly consider the defendant's willingness to blame others. At sentencing, the defendant complained that his immigration attorney was not prosecuted. The tens of thousands of pages the defendant received from the law firm and provided to the government show that the defendant was dishonest with his lawyer. The jury saw many of these pages. This illustrates why his false testimony at trial supports an obstruction enhancement. His statements were at odds with tens of thousands of pages of neutral evidence and with the testimony of his lawyer. The jury rejected that he had told his attorney the truth and relied on the

advice he received. The defendant's communications with his lawyer are at odds with his theory of culpability.

In sum, the United States submits that the guidelines and the statutory sentencing factors call for a sentence of more than 130 months in prison, less than half of the advisory sentencing guideline range this Court found to be applicable.

>JOHN F. WALSH
>United States Attorney
>
>By: s/Robert Brown
>ROBERT BROWN
>Assistant United States Attorney
>
>By: s/Beth Gibson
>BETH GIBSON
>Special Assistant United States Attorney
>United States Attorney's Office
>1225 17th Street, Suite 700
>Denver, Colorado 80202
>Telephone: (303) 454-0100
>Telecopier: (303) 454-0403
>E-mail: Robert.Brown5@usdoj.gov
>Beth.Gibson@usdoj.gov
>Attorneys for the United States

CERTIFICATE OF SERVICE

   I hereby certify that on this 31st day of January, 2014, I electronically filed the foregoing **GOVERNMENT'S OPPOSITION TO INTENDED SENTENCE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Peter D. Menges**

pmenges@mengeslaw.com

**Michael Sheehan**

michael.sheehan.esq@gmail.com

               s/Beth Gibson
               BETH GIBSON
               Special Assistant United States Attorney
               United States Attorney's Office
               1225 17th Street, Suite 700
               Denver, Colorado 80202
               Telephone: (303) 454-0100
               Telecopier: (303) 454-0403
               E-mail: Beth.Gibson@usdoj.gov
               Attorney for the United States