IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 12-cr-00106-MSK

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1. KIZZY KALU;**

2. PHILIP LANGERMAN

      Defendant.

---

## MR. KALU'S SUPPLEMENTAL MOTION FOR VARIANT SENTENCE

---

Comes now, Mr. Kizzy Kalu, by and through counsel, Mr. Peter D. Menges and Mr. Michael Sheehan, and supplements his previously filed Motion for Variant Sentence [Doc. # 291], as follows:

**1. <u>Mr. Kalu's Sentencing Position</u>.**

Mr. Kalu has now been in custody for 23 months.  Mr. Kalu requests he be sentenced to credit for time served, followed by a term of supervised release with any conditions the Court deems necessary.   This sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a) and other sentencing considerations.

**2. <u>Additional Statutory Factors under 18 U.S.C. §3553(a).</u>**

      **<u>The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, pursuant to 18 U.S.C 3553(a)(6).</u>**

At the December 10, 2013 sentencing hearing, the Court properly noted that this case is different than other cases involving forced labor and labor trafficking.  The Court stated this is a case about

"fraud and economic coercion."   Mr. Kalu asks the Court to consider cases involving similar defendants who have been found guilty of similar conduct, based on this case being an economic crime based on fraud.

*1. United States v. Lilia Tabafunda* – 12-cr-1067 – Central District of California.[1]

On January 27, 2014, Ms. Lilia Tabafunda was sentenced to 24 months in prison for very similar conduct as Mr. Kalu.  Ms. Tabafunda ran an employment agency in California, where she was filing fraudulent H-1B visa petitions and other fraudulent documents on behalf of dozens of aliens she falsely claimed had been recruited for positions with prominent hospitals and non-profit organizations.

A summation of the facts of Ms. Tabafunda's case are as follows:

According to the ICE News Release "Court documents in the case allege that for nearly a decade Tabafunda used the names of nonexistent companies and non-profit organizations in fraudulent employment-based, non-immigrant visa petitions submitted to USCIS and DOL.

. . .

Tabafunda charged her clients anywhere from $2,500 to $10,000 to file visa petitions on their behalf. Most of Tabafunda's clients were Philippine nationals who originally entered the United States on tourist visas." *See* Exhibit A – ICE New Release.

---

[1] *See* Exhibit A – ICE New Release dated January 27, 2014; *See also* Exhibit B – Ms. Tabafunda's plea agreement.  *See also* Exhibit C – Ms. Tabafunda's indictment.  Undersigned Counsel has not attached all the relevant pleadings concerning the referenced cases.  All the relevant pleadings for these cases can be found on PACER.

2

Ms. Tabafunda actually filed more petitions and other fraudulent documents over a longer period of time than Mr. Kalu is alleged to have done.  Between 2004 and 2011, Ms. Tabafunda "filed or caused to be filed at least 70 fraudulent LCAs and I-129 visa petitions within the Central District of California." *Id.*

The Court's anticipated sentence of 130 months for Mr. Kalu is 541% higher of a sentence than the 24 month sentence Ms. Tabafunda received.

*2. United States v. Dynanoba Kendre* – 08-cr-00071-SHR – Middle District of Pennsylvania.[2]

On September 19, 2011, in the Middle District of Pennsylvania, Mr. Dynanoba Kendre, the owner of Global Healthcare Group and Fortune 500 Systems, was sentenced to 21 months in prison following his conviction on visa fraud and money laundering charges.  The allegations in this case are also similar to Mr. Kalu's.

A summation of the facts of Mr. Kendre's case are as follows:

According to the ICE News Release, "The investigation revealed that Kendre defrauded the H-1B, Temporary Foreign Worker Visa Program, as well as the Permanent Labor Certification Program, by submitting Labor Condition Applications containing false and misleading information. Kendre accepted cash payments from foreign workers, who were not employed, in order to produce false payroll checks and W-2 wage and tax statements indicating the foreign worker was so employed.

The fake payroll checks and W-2 wage and tax statements were submitted in support of H-1B Visa

---

[2] *See* Exhibit D – ICE New Release, dated September 20, 2011. The version of facts in the news article are consistent with the pleadings in the case, but it should be noted that the plea agreement in this case does not contain any factual basis.  The facts of the case can be found passim throughout the pleadings. *See also* Exhibit E - *United States v. Kendre*, 070212 FED3, 11-3701.  It should be noted that this appellate decision is limited to a restitution issue.

renewals or for adjustments of alien status by way of the Permanent Labor Certification Program. Foreign workers also paid Kendre a $5,000 "Annual Maintenance Fee" for keeping a visa active with the company, as well as a 25 percent fee for each payroll check processed by the company.

. . .

Despite Kendre's representations in petitions to federal agencies, few of the individuals for whom he submitted petitions actually performed work for his company. When there was no work at his company for them, Kendre instructed the foreign workers to secure cash-paying jobs in other locations. Kendre then engaged in a process known as "running the payroll," whereby the visa recipients were instructed to pay Kendre an amount based on the prevailing wage for which they were petitioned, plus a 25 percent fee that was to cover the company's payroll taxes. Kendre then had his company issue payroll checks for the foreign workers. Those payments were used in part to pay the visa recipients back, as falsified proof of compliance with the terms of their visa requirements and in order to apply for Green Cards. Other portions of the payments were used to pay the company's payroll taxes owed the government, to perpetuate the false visa petitions, and pocketed as profit by Kendre." *See* Exhibit D – ICE New Release.

The Court's anticipated sentence of 130 months for Mr. Kalu is 619% higher of a sentence than the 21 month sentence Mr. Kendre received.

3. *United States v. Samuel Chai Cho Oh* – 10-cr-00014 - Central District of California.[3]

In June of 2011, Mr. Oh, a Korea-born pastor who operated a now defunct Orange County religious university was sentenced to 12 months in prison and ordered to forfeit to the government the $4 million property housing the school following his conviction on visa fraud and money laundering

---

[3] *See* Exhibit F – ICE New Release, dated June 13, 2011; *See also* Exhibit G – Mr. Oh's plea agreement.  *See also* Exhibit H – Mr. Oh's indictment.

charges.

A summation of the facts of Mr. Oh's case are as follows:

According to the ICE News Release, "HSI agents say CUU served as a front for an elaborate student

visa fraud scheme, with Oh handing out phony diplomas and staging actual graduation ceremonies.

According to case affidavits, a confidential source familiar with Oh's business dealings said the pastor

collected $40,000 to $50,000 a month in fees from foreign "students" who received Form I-20s from

CUU certifying their eligibility for academic study. The Form I-20 enables prospective students to go to

a U.S. Embassy or consulate abroad and apply for a student visa. Until October 2009, when its federal

certification was revoked, CUU was authorized by the Department of Homeland Security to accept

foreign students pursuing an education in religious and biblical studies, English as a Second Language

(ESL) and Oriental medicine.

. . .

During the investigation, which began in April 2009, ICE agents arrested and questioned more than 30

foreign nationals who stated they paid Oh fees of up to $10,000 for documentation enabling them to

fraudulently obtain student visas and, in some cases, bogus degrees. The "students" admitted they never

attended class, nor did they ever see any teachers or students on the CUU campus.

In October 2009, ICE agents executed a search warrant at the school, seizing computers and more than

300 student files. A review of that evidence showed that while the majority of CUU's enrollees were

Korean, the school's student body included foreign nationals from more than 20 countries.

When ICE agents and a compliance team from the Student and Exchange Visitor Program (SEVP) paid

an unannounced visit to the CUU campus in March 2009, the school had more than 300 students on its

rolls. According to the case affidavit, Oh conceded during that visit that three-quarters of the school's

students did not attend class regularly and he could only produce course schedules for computer and ESL classes, even though the school was certified to accept foreign students in several other disciplines, including religious studies and Oriental medicine." *See* Exhibit F - ICE New Release, dated June 13, 2011.

Mr. Oh actually filed far more petitions and other fraudulent documents over a longer period of time than Mr. Kalu is alleged to have done. Mr. Oh "issued hundreds of Form I-20 Certificates that falsely represented that certain aliens were bona fide students" from as "early as June 2007, and continuing to in or around October 2009…" *See* Exhibit G at p. 7.

The Court's anticipated sentence of 130 months for Mr. Kalu is 1083% higher of a sentence than the 12 month sentence Mr. Oh received.

**3. Objection to the Court using Mr. Kalu's silence as to the facts of his case during his allocution as an aggravating factor in sentencing.**

At the December 10, 2013 sentencing hearing, the Court voiced much concern with Mr. Kalu not addressing the facts of the case and accepting responsibility. The Court specifically appeared to take issue with Mr. Kalu not admitting guilt, stating: "I did not hear him say that he was accountable for the business that he created, he operated, and he facilitated." *Transcript* at p. 17. "I see no personal responsibility, I see no accountability." *Id.*

Undersigned Counsel informs the Court that Mr. Kalu did not address any of the facts of the case at sentencing under the explicit advice of his Counsel. This matter will be appealed. Should Mr. Kalu's appeal prove successful, this matter may be remanded for a retrial or other further proceedings. Any statements made by Mr. Kalu could be used against him during a retrial or subsequent proceedings. Any acceptance of responsibility will later be characterized, or mischaracterized, as an admission of guilt. It

is common for an attorney to advise his client to not discuss the facts of his case in this situation in order to preserve his rights.

WHEREFORE, Mr. Kizzy Kalu, by and through counsel, Mr. Peter D. Menges, and Mr. Michael Sheehan, hereby supplements his previously filed Motion for Variant Sentence [Doc. # 291] as stated herein.

Dated:  February 5, 2014.

Respectfully submitted,

PETER D. MENGES

s/ Peter Menges
Peter D. Menges, Esq.
The Law Office of Peter D. Menges, P.C.
Attorney Reg. # 28750
Attorney for Defendant
955 Bannock Street, Suite 200
Denver, CO 80204
(303) 333-8433

7

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of February, 2014, a true and correct copy of the foregoing was filed electronically via CM/ECF, and electronically noticed to the following:


Mr. Robert M. Brown, Esq.,
Ms. Beth Gibson, Esq.,
Assistant United States Attorneys
1225 17th Street, Suite 700
Denver, Colorado 80202


s/ Peter Menges