IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

**Criminal Action No. 12-cr-00106-MSK**
**Civil Action No. 15-cv-01727-MSK**

**UNITED STATES OF AMERICA,**

       **Plaintiff,**
**v.**

**KIZZY KALU,**

       **Defendant.**

---

**OPINION AND ORDER DENYING MOTION TO VACATE**

---

**THIS MATTER** comes before the Court pursuant to Mr. Kalu's Motion to Vacate pursuant to 28 U.S.C. § 2255 **(# 393**, as amended **# 395)**, the Government's response **(# 399)**, and Mr. Kalu's reply **(# 400)**.

## FACTS

The Court assumes the reader's familiarity with the proceedings to date, and provides only a brief summary.

In March 2012, Mr. Kalu and a co-Defendant were indicted **(# 1**, as superseded **#149)** on various charges of mail fraud, visa fraud, trafficking in forced labor and others. The charges stemmed from a scheme in which Mr. Kalu and his co-defendant recruited nurses from the Philippines and other locations, ostensibly to serve as nursing instructors at Adam University. Mr. Kalu obtained "specialty" H1B visas for the nurses, representing that they would be employed by that institution (thereby avoiding the numerical caps on available H1B visas). In reality, Adam University did not operate and did not employ the nurses to provide instruction of

1

any kind. Instead, Mr. Kalu initially employed the nurses through a business entity that he owned which contracted to provide their services as unspecialized nursing labor to nursing homes and other medical facilities; later, Mr. Kalu instructed the nurses to find nursing positions on their own. Mr. Kalu charged the nurses a fee for obtaining the visas and also required them to pay over a portion of their salaries, threatening them with immigration consequences if they resisted his demands.

After lengthy pretrial proceedings, the charges against Mr. Kalu were tried to a jury in June 2013. The jury convicted Mr. Kalu on 19 counts of mail fraud (acquitting him on 3 others), 15 counts of inducing or encouraging an alien, 3 counts of visa fraud, 13 counts of forced labor (acquitting him on one), 9 counts of trafficking in forced labor (acquitting him on one), and 29 counts of money laundering (acquitting him on one). In February 2014, the Court sentenced Mr. Kalu to 130 months of imprisonment and imposed a restitution obligation of approximately $ 3.8 million. Mr. Kalu appealed his conviction and sentence. The 10th Circuit affirmed. *U.S. v. Kalu*, 791 F.3d 1194 (10th Cir. 2015).

Mr. Kalu timely filed the instant *pro se*[1] Motion to Vacate **(# 393, 395)** under 28 U.S.C. § 2255. He raises a single ground for relief - that his trial counsel rendered ineffective assistance in pre-trial plea negotiations. Mr. Kalu specifically alleges that approximately three weeks prior to his trial, his counsel told him that the U.S. Attorney had informally offered a plea deal that would include between 30 - 37 months of imprisonment. Mr. Kalu states that at that time his primary goal was to be released from detention as quickly as possible, and his focus was on securing an offer "as close to the time I have served as possible." Thus, he asked his counsel to obtain the offer in writing, and to negotiate further with the Government to avoid application of

---

[1]   Mindful of Mr. Kalu's *pro se* status, the Court liberally construes his filings. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

an enhancement under the Sentencing Guidelines to reduce his Guideline range to as little as 15 – 21 months which was close to the 14 months he had been detained pre-trial.  Mr. Kalu states that he told his counsel that, if the Government was not amenable to the additional negotiations over the enhancement, "he should accept the deal as it is, IN WRITING," and argue against the enhancement at sentencing.

The following week, Mr. Kalu met again with his counsel, at which time his attorney "proceeded to persuade and encourage me to REJECT the government's offer of 30-37 months." According to Mr. Kalu, his counsel's reasoning for rejecting the plea agreement entailed: (i) the likelihood that the court would not accept the deal; (ii) that counsel believed that Mr. Kalu would be acquitted at trial; and (iii) that "even if I lost in some of the counts, I would NEVER be sentenced to a time higher than 37 months."  Mr. Kalu states that, because his counsel had not secured the prior offer and writing and had argued against accepting it, he "had no choice but to succumb to their pressure and go to trial."  Thus, Mr. Kalu rejected the plea offer.

Mr. Kalu attaches a copy of an e-mail, sent to him by his counsel after the jury's verdict but prior to sentencing, in which his counsel relates his recollections of the plea discussions.  Mr. Kalu's counsel confirms receipt of a preliminary plea offer, but emphasizes that "this was NEVER any firm offer" and that "if you were interested, [the Government] would talk . . . about making it a firm offer."  Mr. Kalu's counsel stated that "when we met and discussed it, you were not interested in the offer" and that "you told me that you would only take an offer that was close to credit for time served."  Addressing Mr. Kalu's apparent desire to address the plea offer at his upcoming sentencing, counsel advised against it, explaining that "it was be inappropriate for you to claim there was any firm offer on the table.  When plea offers are conveyed in these types of cases, they are in writing.  We never got past the negotiation stage because you were never

interested in any offer even close to what the government was proposing."

Nevertheless, during his allocution at sentencing, Mr. Kalu addressed the plea offer:

> I just want to ask respectfully and humbly that I should be – I shouldn't be – that I'm not penalized because I went to trial. Why do I say that? Because I'm sorry two weeks before trial, my attorney told me he was discussing with [the U.S. Attorney] the numbers between 30 and 37 months. And my wife just lost her mom, and I just wanted to go home. And after discussing it with my attorneys, because there was nothing written about this, I decided I knew I felt that I should go to trial.

Because Mr. Kalu's allegations in the instant motion concerned the advice he received from his counsel, the Court issued an Order **(# 403)** inviting Mr. Kalu's counsel to provide their recollections of the same conversation. Mr. Menges, Mr. Kalu's primary counsel, supplied an affidavit **(# 405**, as corrected **# 407)** stating that: (i) no formal plea offer was ever made by the Government; (ii) Mr. Menges had had "very loose informal discussions" about a possible plea with the Government; (iii) Mr. Menges then met with Mr. Kalu, whereupon they discussed a "hypothetical" of a possible plea in the 30-37 month range; and (iv) Mr. Menges denied ever telling Mr. Kalu that he should reject any plea offers, that the Court would reject a plea, that Mr. Kalu was assured of being acquitted at trial, or that Mr. Kalu would never be sentenced to a term in excess of 37 months. Mr. Sheehan, Mr. Menges' co-counsel, also submitted an affidavit **(#406)**, stating that: (i) Mr. Sheehan was at the meeting where Mr. Menges and Mr. Kalu discussed the possibility of a plea offer; (ii) Mr. Menges informed Mr. Kalu at the time that "there was no offer on the table"; (iii) Mr. Kalu "expressed no interest in negotiating a plea agreement"; and (iv) that neither he nor Mr. Menges encouraged Mr. Kalu to reject any plea offer, assured him of an acquittal at trial, or told him that he would not be sentenced to a term longer than 37 months.

## **ANALYSIS**

A convicted defendant seeking relief under 28 U.S.C. § 2255 bears the burden of showing that his conviction or sentence was obtained in violation of the Constitution or federal law. *U.S. v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011).

### A.  Hearing

Although the court may hold an evidentiary hearing if the record warrants it, the Court may also exercise its discretion to first evaluate whether the defendant has come forward with a substantial claim warranting further factual development; if the claim is not sufficiently substantial, or if the record is sufficiently complete to resolve the motion on its merits, it may be denied without a hearing.  *U.S. v. Jasso Chavero*, 630 Fed.Appx. 866, 868 (10th Cir. 2015); *see also U.S. v. Harrison*, 375 Fed.Appx. 830, 833 (10th Cir. 2010), *citing Marchibroda v. U.S.*, 368 U.S. 487, 495 (1962) ("there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner").

In this case, Mr. Kalu and both of his attorneys participated in a meeting that occurred in mid-2013 which is the basis of this motion.  Each has stated, in some detail, his recollection of the discussions at that meeting.  Moreover, both Mr. Kalu and Mr. Menges have provided additional documents that further clarify the contents of those discussions.  No one has suggested that there are additional witnesses or evidence that could shed light on the advice that Mr. Kalu was given at the time, or that there are additional documents that should be considered.  Thus, it does not appear to this Court that an in-person hearing would materially clarify the record. Indeed, the Court assumes that each party would give testimony consistent with the representations made and that cross-examination of each witness would be unlikely to cause any of them to waver from the version of events.  Thus, the Court finds that an evidentiary hearing

would not meaningfully add to the record presently before the Court and it is appropriate to consider Mr. Kalu's motion on its merits based on the record recited above.

**B. Merits**

When a claim under § 2255 is premised upon the ineffectiveness of the defendant's counsel, the defendant must show: (i) that counsel's performance fell below an objective standard of reasonableness (that is, that counsel was ineffective); and (ii) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different (that is, that the error was prejudicial). *Id.*, *citing Strickland v. Washington*, 466 U.S. 668, 688 (1984).

The Sixth Amendment's guarantee of the effective assistance of counsel extends to pretrial plea negotiations. *Laffler v. Cooper*, 132 S.Ct. 1376, 1384 (2012). The Supreme Court has declined to "try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the [plea] process." *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012). But it has identified certain tasks that counsel must perform. *Frye* establishes the proposition that, at the very least, counsel is obligated to inform a defendant of a formal plea offer that has been made by the government, giving the defendant the opportunity to accept or reject it. *Id. Padilla v. Kentucky*, 559 U.S. 356 (2010), establishes that counsel must advise the defendant of adverse legal consequences (such as deportation) that are certain to flow from entering a plea of guilty.

Close scrutiny of Mr. Kalu's allegations reveals that none of these obligations are at issue. The parties agree and the record establishes that no <u>formal</u> written plea offer was made by the Government such that *Frye*'s notice requirements were triggered. 132 S.Ct. at 1408-09 (suggesting that a <u>formal</u> plea offer is required, as "the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes

6

more clear if some later inquiry turns on the conduct of earlier pretrial negotiations"). Mr. Kalu acknowledges that there was no written offer for a plea agreement, that he was told that an offer would have to be written to be considered a formal offer and in the face of this information, Mr. Kalua purportedly told his counsel to negotiate with the Government for particular terms. The Government's response, Mr. Menges and Mr. Sheehan's affidavits, and Mr. Menges' e-mail all confirm that the parties had only <u>preliminary</u> discussions about a possible plea agreement, and that no formal plea negotiations ensued. In this record, the Court finds no evidence that the Government made a formal plea offer to Mr. Kalu.

Mr. Kalu's claims, instead, appear to focus on counsel's conduct unrelated to a formal plea agreement - first, he contends that his counsel disobeyed his instructions by not seeking out and obtaining a formal plea offer consistent with his objectives or the preliminary discussions, and second, that his counsel improperly convinced him to reject any possible plea offer and to seek acquittal at trial. Neither of these contentions implicates particular obligations of counsel during plea negotiations addressed by the Supreme Court, and thus, the Court considers whether such conduct violates ordinary norms of professional attorney conduct. In doing so, the Court is mindful that "judicial scrutiny of counsel's performance must be highly deferential" and that the reasonableness of counsel's conduct must be made as of the time of the attorney's actions, not with the benefit of hindsight. *Strickland*, 466 U.S. at 689.

The Court begins with Mr. Kalu's assertion that he told his counsel to seek to have the offer of a 30-37 month deal reduced to a formal writing so he could accept it. Although the record suggests that Mr. Kalu and Mr. Menges did have some discussions about the possibility of a plea offer in the 30-37 month range, nothing in the record supports Mr. Kalu's assertion that the Government was also amenable to such an offer. Indeed, the only people with firsthand

knowledge of plea discussions were Mr. Menges and the Government. Both deny that the Government was willing to offer Mr. Kalu a plea agreement that would result in that sentencing range to support his understanding. Mr. Kalu misunderstood the "hypothetical" nature of his discussions with Mr. Menges concerning the possibility of a plea, perhaps Mr. Kalu took those discussions more optimistically than he should have, or perhaps the Government indeed gave Mr. Menges signals that it might be amenable to a 30-37 month plea, only to get cold feet when Mr. Menges returned with a willingness to accept that offer. But the Court cannot say that any of these situations constitute ineffective assistance by Mr. Menges. Without clear evidence that the Government was willing to enter into a plea agreement that would result in a Guideline calculation of an imprisonment term of 30-37 months plea, Mr. Kalu has not met his burden of showing ineffective assistance by Mr. Menges.

That leaves Mr. Kalu's allegation that Mr. Menges induced him to abandon thoughts of a plea agreement in favor of proceeding to trial by telling Mr. Kalu that he was certain to be acquitted, and in no event would he face more the 37 months' imprisonment even if convicted. Although no Supreme Court authority addresses guarantees of this type, this Court will assume, for the purposes of this argument, that if trial counsel made such bold predictions in order to discourage a defendant from pursuing further plea negotiations, such counsel might be acting ineffectively.

On the instant record, however, the Court cannot find that Mr. Menges made such representations. Mr. Menges denies having done so, and Mr. Sheehan confirms Mr. Menges' recollection. Moreover, it would be extremely unlikely that an able and experienced criminal defense counsel – a label that certainly applies to Mr. Menges – would make such bold assurances, particularly in a case such as this in which the evidence against Mr. Kalu was

substantial and the potential range of punishment was far greater than 37 months. Once again, it may be that Mr. Kalu misunderstood Mr. Menges or that he seized on the more optimistic parts of Mr. Menges' advice while ignoring more cautious admonitions. But the Court does not find that Mr. Menges offered a guarantee of acquittal or guarantee of a minimal sentence to Mr. Kalu.

Accordingly, the Court finds that Mr. Kalu has failed to carry his burden of demonstrating that Mr. Menges rendered ineffective assistance to him during plea negotiations. Thus, Mr. Kalu's Motion to Vacate is **DENIED**.

## **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Mr. Kalu's Motion to Vacate **(# 393)**. The Clerk of the Court shall further terminate the various motions in the docket that relate to Mr. Kalu's substantive motion **(# 398, 401, 402, 407)**. To the extent that Mr. Kalu requires and requests a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c), the Court has considered the applicable standards and finds that Mr. Kalu has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court **DENIES** a Certificate of Appealability.

Dated this 13th day of December, 2016.

**BY THE COURT:**

_____
Marcia S. Krieger
Chief United States District Judge