**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger**

Criminal Action No. 12-cr-00106-MSK

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

1.    **KIZZY KALU,**

    Defendant.

---

**OPINION AND ORDER DENYING MOTIONS FOR SENTENCE REDUCTION**

---

**THIS MATTER** comes before the Court pursuant to Mr. Kalu's motions **(# 418, 419)** requesting an adjustment of his sentence pursuant to 18 U.S.C. §3582, to which no response was filed by the Government; and Mr. Kalu's Emergency Motion For Release From Custody **(# 421**, the Government's response **(# 423, 424)**, and Mr. Kalu's reply **(#425)**. Also pending is the Government's Motion for Leave to Restrict **(# 422)** public access to its response brief.

In 2014, Mr. Kalu was convicted of numerous counts of mail fraud, 18 U.S.C. §1341; visa fraud, 18 U.S.C. § 1546; and trafficking in forced labor, 18 U.S.C. § 1589, 1590, among others. In April 2014, the Court sentenced Mr. Kalu to a term of imprisonment of 130 months **(# 348)**.

### A. Motion pursuant to 18 U.S.C. § 3582

In October 2019, Mr. Kalu filed a *pro se*[1] document purporting to be a motion "for some form of sentence reduction under 18 [U.S.C.] 3582." **(# 418)**.[2] Mr. Kalu explained that he had "completed about 84% of [his] prison sentence" and that he had "tak[en] in consideration the harm I have caused which led me to a conscious decision to rectify my wrong by seeking ways to program and be a better citizen and help others (sic) inmates." He recited that he had taken various classes during his incarceration and that he has assisted other inmates via teaching and tutoring. As a result, he stated that "I pray the court for mercy for some form of sentence reduction under 18 [U.S.C.] § 3553(a)."

Once a criminal sentence has been imposed, 18 U.S.C § 3582 provides for only a limited number of circumstances in which the Court may modify it. Most of those grounds are facially not applicable here. *See e.g.* 18 U.S.C. §3582(c)(2) (allowing sentence reduction upon a post-sentencing change in the applicable Sentencing Guidelines); 18 U.S.C. § 3582(b)(2), (c)(1)(B) (allowing modification pursuant to Fed. R. Crim. P. 35, which provides for adjustments to a sentence on certain limited grounds shortly after its imposition), 18 U.S.C. § 3582(d) (release due to diagnosis of the inmate with a terminal illness).

The remaining provision is 18 U.S.C. § 3582(c)(1)(A), which provides both specific criteria for modifying a sentence and specific procedures that must be followed

---

[1] Mindful of Mr. Kalu's *pro se* status, the Court construes his filings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

[2] The docket contains two separate filings **(# 418, 419)** containing identical substantive content, but bearing different signatures by Mr. Kalu and which were received by the Clerk of the Court on different dates. Because the documents are substantively identical, the Court will treat Docket # 419 as a duplicate of Docket # 418 and strike it.

in order to request such a modification. Turning first to the procedure, the statute contemplates that such a motion will be brought, in the first instance, on the inmate's behalf by the Director of the Bureau of Prisons. For an inmate to bring such a motion directly, the inmate must show that he has made a request of the Bureau of Prisons that it file such a motion on his behalf, that the Bureau of Prisons has refused, and that the inmate "has fully exhausted all administrative rights to appeal [the] failure of the Bureau of Prisons to bring [that] motion."[3]

Assuming the inmate has satisfied the procedural requirements, the statute allows the Court to modify a sentence on only two grounds: (i) because "extraordinary and compelling reasons warrant such a reduction," or (ii) because the inmate is at least 70 years old, has served more than 30 years of a sentence, and is no longer considered to be a danger to society. 18 U.S.C. § 3582(c)(1)(A)(i), (ii). Because Mr. Kalu clearly does not fit within the latter provision – he is neither older than 70 years of age nor has he served more than 30 years of a sentence), the only grounds upon which Mr. Kalu may seek a reduction in his sentence is upon a showing of "extraordinary and compelling reasons."

The Court finds that Mr. Kalu has failed to demonstrate that he has satisfied the procedural requirements for requesting a sentence reduction under 18 U.S.C. § 3582. He has not indicated that he first requested the Bureau of Prisons to bring this motion on his behalf, nor has he shown that he exhausted any administrative procedures that exist to

---

[3] The inmate may also show that he requested the Bureau of Prisons to bring a motion on his behalf and that more than 30 days have elapsed since that request without a response from the Bureau. In either event, the statute is clear that the inmate must first seek intercession from the Bureau of Prisons before filing a motion directly with the Court.

request reconsideration of the Bureau of Prisons' refusal to do so.  For this reason alone, his motion is denied.  Moreover, were the Court to reach the merits of Mr. Kalu's motion, it would find that the grounds he has stated do not rise to the level of "extraordinary and compelling reasons" for a sentence reduction.  Mr. Kalu has expressed remorse for his crimes and a desire to serve the community through his own personal rehabilitation and by assisting other inmates with theirs.  Although the Court applauds Mr. Kalu for those efforts, those are precisely the sort of rehabilitative steps that the Court expects <u>every</u> inmate to undertake.  Rather than "extraordinary" circumstances, these steps are the foundation of every inmate's successful re-integration into society.  Because Mr. Kalu has not demonstrated circumstances that present an "extraordinary and compelling" case for a sentence reduction, the Court would deny his motion on its merits as well.

Accordingly, the Court denies Mr. Kalu's motion for a sentence reduction.

### B. Compassionate release

On April 14, 2020, Mr. Kalu filed a *pro se* "Emergency Motion for the Remaining Six Months of My Sentence To Be Moved to Home Confinement Under the Emergency Condition of the CARES Act."  In this abbreviated motion, Mr. Kalu indicates that: (i) he is currently housed at the Bureau of Prisons' facility in Oakdale, Louisiana; (ii) he is scheduled to be released on September 9, 2020; (iii) the Covid-19 pandemic has "claimed the lives of 8 inmates in our Oakdale facility" in the past two weeks; (iv) Mr. Kalu is 56 years old, has heart problems, hypertension, and kidney disease; (v) that "the warden has denied my request"; and (vi) the United States Attorney General, Robert Barr, issued a memorandum on April 3, 2020 "to send vulnerable minimum risk inmates at the Oakdale facility to home confinement" due to the Covid pandemic.

The Government filed a response to Mr. Kalu's motion.  Among other things, the Government argues: (i) the Bureau has been and continues to respond appropriately to the Covid pandemic; (ii) is response to Attorney General Barr's memorandum, the Bureau has reviewed the status of all inmates at the Oakdale facility and has determined that Mr. Kalu is not eligible for release to home confinement due to indications of past violence reflected in his Presentence Investigation Report and because his age is below the Centers for Disease Control's guidelines for vulnerability to Covid infections; (iii) that the Court lacks jurisdiction to consider Mr. Kalu's motion because Mr. Kalu has not shown that he has requested the Bureau of Prisons to file a compassionate release motion on his behalf or that he has exhausted the administrative rights he has to appeal the Bureau's refusal to do so, as required by 18 U.S.C. § 3582(c)(1); and (iv) Mr. Kalu has not shown that the spread of Covid-19, generally, presents "extraordinary and compelling" circumstances warranting a modification of his sentence.

In reply, Mr. Kalu submits a series of documents that he contends "evidence[ ] my request to [the Bureau of Prisons] and their official denial of my request."  He states that he has therefore "officially fully exhausted my administrative remedies with [the Bureau]."  The documents in question consist of an April 9, 2020 e-mail from an individual named Scott Welch (whose title or affiliation is otherwise unclear, but who, from context, appears to be a friend of Mr. Kalu's brother) to an individual named Juan Baltazar, who appears to be affiliated to some degree with the Bureau of Prisons.  Mr. Welch states that he is writing on behalf of Mr. Kalu's brother, "who is seeking an early release of his brother Kizzy G. Kalu," and requesting that, in light of the Covid situation and Mr. Kalu's pre-existing medical condition, Mr. Kalu be released to home

5

confinement in care of Mr. Kalu's brother. A second document in the record is a similar memo written by Mr. Welch on the same date, addressed to an individual named Kaci Maxey, who also has some apparent affiliation with the Bureau of Prisons. The final document is an April 9, 2020 e-mail response from an unidentified author (but which may be the addressee of Mr. Welch's first e-mail), which offers a boilerplate response that "The Bureau of Prisons is utilizing the full scope of its various authorities to ensure that inmates at heightened risk of complications from COVID-19 are identified and housed safely and appropriately . . . ." The e-mail goes on to recite, generally, certain actions that the Bureau is taking ("modified institution operations; routine staff and inmate medical screening; use of the home confinement authority, where appropriate. . ."), and invites the reader to visit the Bureau's public website" for further information.

The Court treats Mr. Kalu's motion as one made pursuant to 18 U.S.C. §3582(c). [4] The Court agrees with the Government that Mr. Kalu has failed to show that he exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1). It is not necessarily clear to the Court whether Mr. Welch's e-mail to certain Bureau officials "on [Mr. Kalu's brother's] behalf" is sufficient to constitute a request <u>by Mr. Kalu</u> to the Bureau for purposes of §3852(c)(1). Even if it is, and if the Court treats the boilerplate response sent to Mr. Welch as a denial of that request, there is no indication that Mr. Kalu has

---

[4] At least one court has concluded that requests of this type are not cognizable as motions for reduction of a sentence under 18 U.S.C. §3582(c), but rather are *habeas* petitions under 28 U.S.C. § 2241. *See U.S. v. Costello*, 2020 WL 2341599 (M.D.Pa. May 11, 2020) (slip op.). If that assessment is correct, Mr. Kalu is required to file such a request in the District where his incarceration is occurring – *e.g.* the Western District of Louisiana. Because this Court does not find a basis to grant Mr. Kalu's request in any event, it need not reach the question of whether Mr. Kalu has filed his request in the proper court.

proceeded to exhaust the administrative rights that permit him to appeal the Bureau's refusal to file a motion on his behalf. *See generally* 28 C.F.R. § 542.15 (setting forth the Bureau's Administrative Remedy program). Whether the Court treats the exhaustion requirement of 18 U.S.C. §3582(c)(1) as a jurisdictional requirement or an affirmative defense that the Government can waive, the outcome is the same here as the Government's response expressly raises the issue of Mr. Kalu's failure to exhaust his administrative remedies. Accordingly, Mr. Kalu's motion is denied.[5]

---

[5] The Court expresses no opinion on the merits of Mr. Kalu's motion. But the Court does offer several observations, in the event that Mr. Kalu chooses to exhaust his administrative remedies at file a new motion:

• Mr. Kalu claims to suffer from hypertension, kidney disease, and unspecified "heart problems," but he has not submitted any medical records or other materials that attest to the nature and severity of these ailments. Mr. Kalu's Presentence Investigation Report **(# 297)** (admittedly prepared some 6½ years ago) mentions only that Mr. Kalu suffers from "high blood pressure" (hypertension), for which he takes the drug Lisinopril.

• Mr. Kalu mentions that the facility in Oakdale where he is currently housed has experienced 8 inmate deaths. The Bureau maintains two facilities at Oakdale, designated as "Oakdale I" and "Oakdale II." According to https://www.bop.gov/coronavirus/ as of the date of this Opinion, the Oakdale I facility has reported 49 cases in inmate-contracted Covid, 17 cases of staff-contracted Covid, and 7 inmate deaths. But the Oakdale II facility – where Mr. Kalu is housed, according to https://www.bop.gov/inmateloc/ -- has experienced only 1 inmate-contracted case of Covid (and 8 staff-contracted cases).

• Mr. Kalu's motion requests only that he be released to "home confinement," offering no details as to where, with whom, and under what circumstances. Mr. Welch's e-mails suggest that Mr. Kalu would reside with his brother in Katy, Texas, but again, does not provide any details regarding the circumstances of that arrangement. An essential assumption of Mr. Kalu's motion is that his risk of contracting Covid at the location he would be released to would necessarily be less than his risk of contracting it in his current facility. But such an assumption is dependent upon a host of facts relating to the proposed release location and no such facts are offered here. *See e.g. U.S. v. Pass*, 2020 WL 2332001 (E.D.Pa. May 11, 2020) (slip op.) (denying release, in part because the inmate "has provided no information about his future living accommodations beyond what has been described: no indication of whether his fiancée has been tested, whether she has or does not have COVID, whether anyone else lives in the house, whether they have or do not have the virus, or whether anyone else who is living in the house has been

7

### C. Government's Motion to Restrict

The Government moves to restrict its response to Mr. Kalu's motion, noting that that response "makes reference to [Mr. Kalu's] description of his health conditions which should not be made public." The Government's response does nothing more than refer to the health conditions that Mr. Kalu mentioned in his motion, and Mr. Kalu has not requested that his motion be subject to any restricted access. And, in any event, because the particular details of Mr. Kalu's health conditions are, in large part, the very foundation for his request for an adjustment of his sentence, the public has a profound interest in having access to information about those health conditions in order to assess the reasonableness of this Court's disposition of Mr. Kalu's motion. Accordingly, the Government's motion is denied.

For the foregoing reasons, Mr. Kalu's motion pursuant to 18 U.S.C. §3582 **(# 418)** is **DENIED**. Mr. Kalu's identical motion **(# 419)** is **STRICKEN** as redundant. Mr. Kalu's Emergency Motion For Release From Custody **(# 421)** is **DENIED**. The Government's Motion for Leave to Restrict **(# 422)** is **DENIED**, and the Clerk of the Court shall lift the provisional restrictions on Docket # 423 and 424.

Dated this 13th day of May, 2020.

**BY THE COURT:**

Marcia S. Krieger

---

socially isolating to protect themselves and others appropriately," and noting that the proposed release location is "home to the Pennsylvania counties hardest hit by the virus").

Senior United States District Judge